UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTH CASCADES CONSERVATION COUNCIL, KATHY JOHNSON,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, et al.VICKIE CHRISTIANSEN, Chief of the Forest Service; JAMIE KINGSBURY, Former Forest Supervisor for Mount-Baker Snoqualmie National Forest; JODY WEIL, Current Forest Supervisor for Mount-Baker Snoqualmie National Forest; PETER FORBES, Former District Ranger for Darrington Ranger District; ERIN ULOTH, Former Acting District Ranger for Darrington Ranger District; GRETCHEN SMITH, Current District Ranger Darrington Ranger District; PHYLLIS REED, Project Lead for Darrington Ranger District,<br><br>Defendants,<br><br>and<br><br>HAMPTON LUMBER MILLS-WASHINGTON, INC., a Washington corporation, HAMPTON TREE FARMS, LLC, an Oregon limited liability corporation, and SKAGIT LOG AND CONSTRUCTION, INC., a Washington corporation,<br><br>Defendant-Intervenors. | CASE NO. 2:20-cv-01321-RAJ-BAT<br><br>**ORDER GRANTING MOTION TO INTERVENE** |

ORDER GRANTING MOTION TO
INTERVENE - 1

1   Hampton Lumber Mills-Washington, Inc., Hampton Tree Farms, LLC ("Hampton") and
2   Skagit Log and Construction, Inc. ("Skagit Log") (collectively "Contractors"), move the Court
3   for leave to intervene as defendants pursuant to LCR 7(d)(2) and LCR 7(j) of the Local Rules of
4   the United States District Court for the Western District of Washington, and Rules 24(a)(2) and 24(b)
5   of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Dkt. 15.

Defendants do not oppose the Contractors' motion to intervene. *Id.*, p. 2. Plaintiffs have not filed any opposition to the motion. Having thoroughly considered the motion and relevant record, the Court **GRANTS** the motion to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2).

BACKGROUND

This case is a challenge to the South Fork Stillaguamish Project, located in the Darrington Ranger District of the Mount-Baker Snoqualmie National Forest. Compl. ¶¶ 1, 24. Plaintiffs allege violations of the National Environmental Policy Act (NEPA) and National Forest Management Act (NFMA). *Id*. ¶¶ 111-48. After conducting the environmental review process over a four-year period, the Forest Service issued a Decision Notice and Finding of No Significant Impact approving the project in May 2019. Administrative Record (AR) 17268, 20268. Plaintiffs filed suit eighteen months later. Compl. at 28.

The project encompasses 2,000 to 3,000 acres of commercial thinning, 1,060 acres of noncommercial thinning, and about 30 miles of road construction. Dkt. 16, Decl. of Anjolene Price ¶ 13. The purpose of the thinning activities is to enhance forest stand structure to serve as habitat for old-growth dependent species, improve vegetation diversity in riparian reserve areas, and promote stand resiliency on the landscape. *Id*. Other project activities include road treatments, trailhead enhancements, fish passage upgrades, and invasive plant treatments. *Id*.

The SF Stilly Project will be implemented through three forestry contracts, Bonanza Thin, Mallardy Thin, and Green Grouse. Dkt. 16, Price Decl. ¶ 17. Together, these contracts will

ORDER GRANTING MOTION TO
INTERVENE - 2

produce about 19.5 million board feet (MMBF), which was the Forest's entire timber sale volume for Fiscal Year 2020. Mallardy Thin and Green Grouse are "stewardship" contracts pursuant to 16 U.S.C. § 6591c, whereby contractors remove material that is both commercially valuable and not valuable. The value of the timber is then offset against payments otherwise due for forest restoration work. 16 U.S.C. § 6591c(d)(4)(A). Congress enacted authority for these contracts in order to "achieve land management goals for the national forests and the public lands that meet local and rural community needs." 16 U.S.C. § 6591c(b). In addition to commercial and non-commercial thinning, the contracts include fish passage improvements and culvert replacements, road rehabilitation for access to recreation areas, weed abatement, and work to reduce sedimentation risk. *Id.*, Price Decl. ¶¶ 20, 27-28; Dkt. 17, Decl. of Lincoln Torgerson ¶¶ 4, 6, 10.

Hampton was awarded the Bonanza Thin contract in June 2020 and Mallardy Thin on November 6, 2020. Dkt. 16, Price Decl. ¶¶ 17, 25. The timber supply from these contracts will support operations of Hampton's Darrington mill, which employs about 170 people at family-wage jobs in a rural Snohomish County community of 1,400. *Id.* ¶ 8. The community's vitality is directly tied to the mill, and the mill's vitality is directly tied to timber resulting from active management of the surrounding Mount Baker-Snoqualmie National Forest. *Id.* ¶¶ 8-9. The project work here will also provide work for three small contracting companies in Snohomish and Skagit Counties which employ about 95 people in total. *Id.* ¶¶ 21, 29. Hampton expects to perform road work on both contracts starting in June and October 2021, with road and harvest work to be completed by 2022. *Id.* ¶¶ 20-21, 26-29. There is a very short window in July and August for completing fish passage improvements. *Id.* ¶ 28. Hampton has identified a limited portion of the Mallardy Thin contract for harvest in summer 2021. *Id.* ¶ 33.

ORDER GRANTING MOTION TO
INTERVENE - 3

Skagit Log was awarded the Green Grouse contract in August. Dkt. 17, Torgerson Decl. ¶ 4. Given that plaintiffs waited a year and a half to bring suit, Skagit Log reasonably invested substantial sums in support of project implementation—approximately $555,000 to obtain the needed equipment. *Id*. ¶ 12. Loss of the contract would be devastating to Skagit Log and its nine employees. *Id*. ¶¶ 3, 12. Work on the project will also support employment at mills in Burlington/Mt. Vernon and Port Angeles. *Id*. ¶ 5. Skagit Log anticipates implementing road work and timber harvest beginning June 1, 2021. *Id*. ¶¶ 7-8. Work must cease for the season by October 15. *Id*.

The SF Stilly Project is one of the Mount-Baker Snoqualmie National Forest projects that received collaborative support from the Darrington Collaborative. The Collaborative is "a partnership between diverse interests such as major conservation organizations, local STEM education programs, the local timber industry, and the community of Darrington, with the goal of increasing ecologically sustainable timber harvests in the Darrington region, creating jobs, and improving and restoring the health of forests and watersheds." Dkt. 16, Price Decl., Ex. A at 1; *see id*. at 4 (listing signatories).

In 2019, the collaborative received a Building Forest Partnership Grant for $40,000 to hire a part-time coordinator to support forest restoration work on the Mount-Baker Snoqualmie National Forest and received an All Lands Forest Restoration Grant for approximately $99,300 in 2018 and $211,500 in 2019 to support restoration forestry work, including thinning dense stands, doing stand exams, road inventories, and pre-sale work. In addition, the Darrington Collaborative received funds from Pew Trusts and hired Resilient Forestry to assist with pre-sale work for the SF Stilly Project, resulting in approximately 192 hours of work related to GPS mapping, cruising and pre-sale layout. Dkt. 16, Price Decl. ¶ 14. The Collaborative, of which

1   Hampton is a member, commented on the project during NEPA review. *Id.*, Price Decl. ¶ 15. The
2   American Forest Resource Council (AFRC), of which Hampton is also a member, provided
3   comments as well. *Id.*, Ex. B.
4       In response to the litigation, the Collaborative issued a letter of support for the project,
5   noting the project provides "a balance between several important values on the Forest." Dkt. 16,
6   Price Decl., Ex. A at 3. The support letter stated "we believe these treatments, over time, will
7   increase the diversity, habitat value, and resilience of these stands and the landscape." *Id*. It also
8   reiterated support for "collaborative projects that appropriately balance ecosystem goals and
9   restoration opportunities with a viable wood products industry that provides jobs and economic
10  benefits to rural communities." *Id*. at 4.

## DISCUSSION

A.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 24 "traditionally receives liberal construction in favor of applicants for intervention," *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), and provides two methods for intervention: intervention as a matter of right and permissive intervention. Absent a statutory right to intervene, a party seeking to intervene as a matter of right must: (1) timely move to intervene; (2) have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) not be adequately represented by existing parties. *See* Fed. R. Civ. P. 24(a)(2); *Arakaki*, 324 F.3d at 1083. Alternatively, a court may, in its discretion, grant permissive intervention where the applicant "has a claim or defense that shares with the main action a common question of law or fact" and where intervention would not "unduly delay or prejudice the adjudication of the

original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3); *see Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (setting forth factors a court may consider when evaluating whether permissive intervention is appropriate).

B.   Motion to Intervene

    1.   Timeliness. Contractors' motion is timely as there is no indication that they improperly delayed their request and the motion was filed before any dispositive motions and a few months after the case was initiated, which minimizes the possibility of prejudice to any party. *See Puget Soundkeeper All. v. Wheeler*, No. C 20-0950 JCC, 2020 WL 5095463, at *2 (W.D. Wash. Aug. 28, 2020) (finding a motion timely where "[t]he parties have yet to engage in discovery or substantive motions practice, which minimizes the possibility of prejudice to any party").

    2.   Protectable Interests. Contractors have significant protectable interests in the litigation in the form of their contracts. "Contract rights are traditionally protectable interests." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001); *see also*, *Sierra Club v. E.P.A.*, 995 F.2d 1478, 1482-83 (9th Cir. 1993) (Interests "in the nature of real or personal property, contracts, or permits" are "plainly protectable" and "squarely in the class of interests traditionally protected by law.")

Additionally, Contractors, as users of public timber, have "a broader interest in any litigation that might impede [their] ability to obtain timber from federal lands in the future." *Native Ecosystems Council v. Marten*, No. 1:17-CV-153-M-DWM, 2018 WL 2364293, at *2 (D. Mont. May 24, 2018). *See also*, *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (reversing denial of a motion to intervene by timber companies and groups).

Finally, Contractors have interests in forest health and community resilience that are cognizable under Rule 24. Dkt. 16, Price Decl. ¶¶ 3-5, 8, 10, 12-15; Dkt. 17, Torgerson Decl. ¶ 6.

ORDER GRANTING MOTION TO
INTERVENE - 6

Hampton has also devoted substantial resources, and hired a full-time staffer, to support collaborative efforts in this area. Dkt. 16, Price Decl. ¶ 3. These stakes in the community and the forest mean that proposed intervenors "are parties with something to lose if this Project is not allowed to go forward." *All. for the Wild Rockies v. United States Forest Serv.*, No. 1:15-CV-00193-EJL, 2016 WL 7626528, at *2 (D. Idaho June 9, 2016) (granting motion to intervene).

3.  Ability to Protect Interests

An adverse decision would impact Hampton and Skagit Log's ability to implement the contracts and the only way to protect their interests in the project is by actively participating in this case and to present their respective defenses and unique perspectives. *See*, *e.g.*, *Sequoia ForestKeeper v. La Price*, No. 1:16-CV-0759-AWI-JLT, 2017 WL 56655, at *1 (E.D. Cal. Jan. 4, 2017) (holding that the purchaser's "protectable interests in the timber contract would be impaired" because plaintiffs' requested relief "would either entirely prevent or restrict [the purchaser] from harvesting timber and acting fully on its contracts"); *Sequoia ForestKeeper v. Watson*, 2017 WL 4310257, at *3 (E.D. Cal. Sept. 28, 2017) (same). Because the relief requested would adversely affect Contractors' rights, they have shown that the disposition of this action would as a practical matter impair their interests and satisfy the third intervention factor.

4)  Adequate Representation by Existing Parties

A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998).

Contractors' have economic interests in the sale contract which are narrower than federal defendant's broad interest in implementing its management strategies. In addition, Contractors

ORDER GRANTING MOTION TO
INTERVENE - 7

offer perspectives and information on restoration forestry, community effects, and collaborative efforts that the other parties are unable to bring forth.

In addition, the interests of the Contractors will not be adequately represented by the federal defendants because the government is not an adequate representative under Rule 24 "as the Agencies represent the public's interest in managing natural and economic resources and the [Contractors] seek to use those resources." *Puget Soundkeeper All. v. Wheeler*, 2020 WL 5095463, at *2 (W.D. Wash. Aug. 28, 2020). Additionally, because Contractors are parties to a contract with the government, concurrent professional representation would likely be infeasible. RPC 1.7 & cmt. 7; *LK Operating, LLC v. Collection Grp., LLC*, 168 Wn. App. 862, 872, 279 P.3d 448 (Div. III, 2012), *amended on reconsideration*, 287 P.3d 628 (2012), *aff'd on other grounds*, 181 Wn.2d 48, 331 P.3d 1147 (2014).

## CONCLUSION

For the foregoing reasons, Contractors' motion to intervene (Dkt. 15) is **GRANTED**. Contractors shall comply with the same dispositive motion deadlines that apply to Defendants under the Court's February 18, 2021 Order (Dkt. 24).

DATED this 9th day of March, 2021.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge